UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
PAMELA D. ADAMS,                    )
                                    )
   Plaintiff,                      )
                                    )
   v.                              )   Civil Action No. 04-856 (RBW)
                                    )
NORMAN Y. MINETA,                   )
   Secretary, Department of Transportation, )
                                    )
   Defendant.                      )
_____)

**MEMORANDUM OPINION**

The plaintiff brings this action alleging racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16 (2000) et seq. ("Title VII"). Complaint ("Compl.") ¶¶ 12-15. Currently before the Court is the defendant's Motion for Summary Judgment and the plaintiff's opposition thereto.[1] For the reasons set forth below, this Court grants in part and denies in part the defendant's motion.

    **I.**    **Factual Background**

The plaintiff, an African American women, commenced her employment with the Federal Aviation Administration ("FAA") in July 1987, as a professional air traffic controller. Compl. ¶ 6. On June 11, 2002, the FAA announced that it was accepting applications for a Traffic Management and Central Altitude Reservation Function ("CARF") Specialist at the FAA's Air

---

[1] The following papers have been submitted in connection with this motion: (1) the defendant's Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss ("Def.'s Mem."); (2) the Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Opp'n"); and (3) the Defendant's Reply to Plaintiff's Opposition to Motion for Summary Judgment ("Def.'s Reply").

Traffic Control System Command Center.  Pl.'s Mot., Ex. 1 (Notice of Position Vacancy).  The position was a temporary one-year detail, with a possible extension to up to two years.  Id.  The position was an MSS-1 level job, which according to the plaintiff, would have entitled her to a four percent pay raise because of the controller-in-charge ("CIC") pay connected with the position.  Compl. ¶ 7.  The plaintiff, who at the time was serving as a Traffic Management Specialist at the same grade level as the CARF Specialist position, applied for the position.  Id.  However, on July 31, 2002, she was notified that she was not selected.  Id.  Rather, Dana Whitman, a white female, was selected for the position.  Id. ¶ 8.  According to the plaintiff, she was more qualified for the position than Whitman.  Id.  The plaintiff suggests that her nonselection for the position amounted to racial discrimination in violation of Title VII.  Id. ¶¶ 12-13.  To support this assertion, the plaintiff contends that both Thomas Paccione, the official who recommended that Whitman be selected for the temporary detail, and Mark Libby, the official who actually selected Whitman for the position, based their decision on factors not published in the vacancy announcement.  Id. ¶ 9.

Following her nonselection for the CARF position, the plaintiff timely sought Equal Employment Opportunity ("EEO") counseling believing that her nonselection amounted to racial discrimination.  Compl. ¶ 10.  According to the plaintiff, since seeking EEO counseling she has been subjected to "an ongoing series of incidents in which FAA management officials have sought to interfere with and otherwise inhibit her from taking advantage of career enhancing assignments and successfully moving to [other air traffic controller] positions [at] other FAA facilities."  Id. ¶ 10.  The plaintiff claims that these actions have been in retaliation for her allegations of unlawful racial discrimination and constitute further Title VII violations.  Id.

On May 27, 2004, the plaintiff commenced this action alleging that the FAA's actions amount to racial discrimination and retaliation, both of which violate Title VII. Compl. ¶¶ 12-15. The defendant has now filed a motion for summary judgment, which is the subject of this opinion. In his motion, the defendant contends that he is entitled to an award of summary judgment because (1) the plaintiff has failed to exhaust her administrative remedies with respect to her retaliation claim, and (2) the plaintiff has failed to establish a prima facie case of racial discrimination because she did not suffer an adverse employment action.[2] Pl.'s Mot. at 1.

## II. Standard of Review

This Court will grant a motion for summary judgment under Rule 56(c) "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When ruling on a summary judgment motion, this Court must draw "all justifiable inferences" in the nonmoving party's favor and accept the nonmoving party's evidence as true. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The Court "may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). However, the plaintiff must establish more than "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position," because "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the

---

[2] For the first time in his reply brief, the defendant suggests that summary judgment is warranted on the retaliation claim because the plaintiff has also failed to establish a prima facie case of retaliation. Def.'s Reply at 2 n.1. "It is well established that this court will not entertain arguments raised for the first time in a party's reply brief." Cronin v. FAA, 73 F.3d 1126, 1134 (D.C. Cir. 1996). Accordingly, this Court will not entertain this untimely argument.

3

requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson</u>, 477 U.S. at 252, 247-48 (emphasis in original). A "genuine" dispute exists "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" <u>Morgan v. Fed. Home Loan Mortgage Corp.</u>, 328 F.3d 647, 650 (D.C. Cir. 2003) (quoting <u>Anderson</u>, 477 U.S. at 248). Therefore, the party opposing summary judgment "'may not rest upon the mere allegations or denials of [the] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" <u>Anderson</u>, 477 U.S. at 248 (quoting <u>First Nat'l Bank of Ariz. v. Cities Serv. Co.</u>, 391 U.S. 253, 288 (1968) (quoting Fed. R. Civ. P. 56(e)). Under Rule 56(c), if "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," summary judgment is warranted. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

### III.   Legal Analysis

**(A)   The Plaintiff's Retaliation Claim**

Title VII protects employees from retaliation for having "opposed any practice made an unlawful employment practice by this title" or for having "made a charge, testified, assisted, or participated in any manner in an investigation, preceding, or hearing under this title." 42 U.S.C. § 2000e-3(a) (2000). "It is well-established that a federal employee may assert a Title VII claim in federal court only after a timely complaint has been presented to the agency involved." <u>Norriddin v. Goldin</u>, 382 F. Supp. 2d 79, 92 (D.D.C. 2005) (citing 29 C.F.R. § 1614.105(a) (2005); <u>Brown v. Gen. Servs. Admin.</u>, 425 U.S. 820, 832 (1976)). The purpose of this exhaustion requirement is to "to give federal agencies an opportunity to handle matters internally whenever possible and to ensure that the federal courts are burdened only when reasonably

necessary." Brown v. Marsh, 777 F.2d 8, 14 (D.C. Cir. 1985).   Thus, a plaintiff's failure to bring a complaint to an EEO counselor within 45 days of the alleged incident will result in the plaintiff losing the right to bring that claim before a federal court.  See, e.g., Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997); Siegel v. Kreps, 654 F.2d 773, 776 (D.C. Cir. 1981); 29 C.F.R. § 1614.105(a)(1).

Here, the defendant claims that the plaintiff's retaliation claim must be dismissed for failure to exhaust her administrative remedies because she did not file a complaint with an EEO counselor alleging retaliation.  Def.'s Mem. at 5-6; Def.'s Mem., Ex. 2 (Wright Decl.) ¶¶ 3-4.  It is undisputed that the plaintiff failed to file a complaint with an EEO counselor alleging retaliation.  Rather, she contends that she did not need to exhaust her administrative remedies as to the retaliation claim.  Pl.'s Opp'n at 3-4.  Specifically, the plaintiff claims that a claimant need not exhaust her administrative remedies for a claim based on retaliation when that retaliation claim arises after an administrative complaint has already been filed.  Id.  Thus, the only question for this Court is whether the plaintiff was required to exhaust her administrative remedies by filing another complaint alleging retaliation with an EEO counselor.

In 2002, the Supreme Court issued its decision in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002), which "effected fundamental changes to the doctrine allowing administratively unexhausted claims in Title VII actions." Martinez v. Potter, 347 F.3d 1208, 1210 (10th Cir. 2003).  In Morgan, the Supreme Court held that a claimant must exhaust her administrative remedies for each discrete incident of discrimination which constitutes an "unlawful employment practice." Morgan, 536 U.S. at 110-13. "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify.  Each

incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" Id. at 114.  Thus, the Supreme Court refused to endorse the Circuit's application of the "continuing violations theory" to what the Circuit Court had "termed 'serial violations'" of discrimination, which had allowed plaintiffs to maintain court actions for discrete acts of discrimination or retaliation that had not been separately exhausted but were "sufficiently related" to a properly exhausted claim.  Id.  In doing so, the Supreme Court emphasized that "'strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.'" Id. at 108 (quoting Mohasco Corp. v. Silver, 447 U.S. 807, 826 (1980)).  The result of the holding in Morgan was to prohibit the plaintiff from pursuing claims of discrete incidents of discrimination unless he had first filed a complaint with an EEO counselor within the proscribed time period. Id. at 122.

Before the Supreme Court issued its decision in Morgan, courts had routinely held that a plaintiff need not exhaust her administrative remedies before filing a claim of retaliation which arose after the filing of an administrative complaint.  See, e.g., McKenzie v. Ill. Dep't of Transp., 92 F.3d 473, 482-83 (7th Cir. 1996); Gupta v. East Tex. State Univ., 654 F.2d 411, 414 (5th Cir. 1981); Sussman v. Tanoue, 39 F. Supp. 2d 13, 21 (D.D.C. 1999); Webb v. District of Columbia, 864 F. Supp. 175, 184 (D.D.C. 1994).  As the Fifth Circuit explained,

> It is the nature of retaliation claims that they arise after the filing of the EEO charge. Requiring prior resort to the EEOC would mean that two charges would have to be filed in a retaliation case — a double filing that would serve no purpose except to create additional procedural technicalities when a single filing would comply with the intent of Title VII.

Gupta, 654 F.2d at 414.  However, following Morgan, which emphasized the need for "strict

adherence to the procedural requirements" of Title VII, some courts have begun to question whether the pre-Morgan judicially created exception to the exhaustion doctrine for retaliation claims remains good law. Those Courts that have squarely addressed this issue have concluded that it is not, and this Court agrees.[3]  See, e.g., Martinez v. Potter, 347 F.3d 1208 (10th Cir. 2003); Nurriddin v. Goldin, 382 F. Supp. 2d 79 (D.D.C. 2005); Romero-Ostolaza v. Ridge, 370 F. Supp. 2d 139 (D.D.C. 2005).

The Tenth Circuit has conclude that the rule enunciated in Morgan is applicable not only to "claims for which no administrative remedy had been sought, when those incidents occurred more than [45] days prior to the filing of plaintiff's EEO complaint," but also "to discrete claims based on incidents occurring after the filing of [the] plaintiff's EEO complaint." Martinez, 347 F.3d at 1210-11.  The Tenth Circuit noted that the Supreme Court's rejection of the continuing violation theory of discrimination for discrete acts of discrimination applies with equal force to alleged violations occurring before or after the filing of an EEO complaint.  Thus, the Court concluded that based on Morgan, Title VII required a plaintiff to exhaust his administrative remedies before brining an action in federal court.  Id. at 1211.  Accordingly, the Court affirmed the district court's dismissal of the plaintiff's additional retaliation claims because even though

---

[3] Admittedly, the plaintiff cites some post-Morgan cases from other members of this Court that have continued to allow retaliation claims to proceed in federal court without first exhausting administrative remedies. See Turner v. District of Columbia, 383 F. Supp. 2d 157, 178 (D.D.C. 2005); Contreras v. Ridge, 305 F. Supp. 2d 126, 135 (D.D.C. 2005); Marshall v. James, 276 F. Supp. 2d 41, 54 (D.D.C. 2003); Baker v. Billington, 260 F. Supp. 2d 59, 66 n.4 (D.D.C. 2003).  Upon reviewing these cases, however, it is clear that they do not address the precise legal issue presented here.  Specifically, they do not examine whether, in light of Morgan, a plaintiff needs to exhaust her administrative remedies before pursuing a retaliation claim in federal court.  Rather, these cases simply apply the ruling in pre-Morgan cases in support of their conclusion that a plaintiff need not exhaust her administrative remedies before bringing a retaliation claim.  See Turner, 383 F. Supp. 2d at 178 & n.11; Contreas, 305 F. Supp. 2d at 135; Marshall, 276 F. Supp. 2d at 54; Baker, 260 F. Supp. 2d at 66 n.4.  Accordingly, these cases are of no help to the plaintiff.  In any event, even if these cases could be read to conclude that Morgan does not require the separate exhaustion of retaliation claims, which they cannot, the holdings in these cases are not binding on this Court.  See, e.g., In re Executive Office of President, 215 F.3d 20, 24 (D.C. Cir. 2000).

these additional claims were predicated upon retaliation claims raised in the original EEO complaint, no separate EEO complaint raising these additional claims had been filed.  Id.; see Dunlap v. Kan. Dep't of Health and Env't, 127 F. App'x. 433 (10th Cir. 2005).  Other members of this Court have reached the same result.  See Green v. Small, No. Civ. A. 05-1055, 2006 WL 148740, at *5 (D.D.C. Jan. 19, 2006) (noting that Morgan prohibits judicial review of claims first raised by the plaintiff in federal court, but concluding that "separate initiation of administrative exhaustion for related post-complaint conduct is not required . . . where the ends of administrative exhaustion have been served by the pursuit of administrative remedies with regard to the subsequent acts.") (quoting Velikonja v. Muller, 315 F. Supp. 2d 66, 74 (D.D.C. 2004)); Kelly v. Small, 391 F. Supp. 2d 30, 41 (D.D.C. 2005) (concluding that in light of Morgan, "[i]n order for plaintiff to pursue his claims in federal court, he must establish that he timely exhausted his administrative remedies for each discrete claim of retaliation"); Romero-Ostolaza, 370 F. Supp. 2d at 149 ("Morgan has, on the whole, been understood to also bar discrete acts occurring after the time period, after the filing of an administrative complaint, when a plaintiff does not file a new complaint or amend the old complaint but instead presents these acts for the first time in federal court.").  This Court agrees with these courts and therefore concludes that in the wake of Morgan, a plaintiff must first exhaust her administrative remedies before filing a action in federal court alleging retaliation in violation of Title VII.

Here, the plaintiff acknowledges that her retaliation claim is based upon "an ongoing series of incidents in which FAA management officials have sought to interfere with and otherwise inhibit [the plaintiff] from taking advantage of career enhancing assignments and successfully moving to ATC positions [at] other FAA facilities."  Compl. ¶¶ 10, 14.  The

plaintiff's retaliation claim is therefore premised on her failure to either be promoted or transferred. Clearly, these are discrete acts of alleged discrimination. Morgan, 536 U.S. at 114. Moreover, it is undisputed that the plaintiff did not seek to file an EEO complaint with regard to these claims of retaliation; rather, she relied upon her original EEO action as the basis for bringing these claims before this Court. However, as already discussed, given the Supreme Court's pronouncement in Morgan, and its command for strict adherence to legislative procedural requirements, the plaintiff's failure to exhaust her administrative remedies bars her from litigating her claim of retaliation before this Court in the first instance. Accordingly, the defendant is entitled to judgement in his favor on the plaintiff's retaliation claim.

**(B)   The Plaintiff's Discrimination Claim**

Under Title VII, "[a]ll personnel actions affecting employees . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). Such claims are analyzed under the burden shifting framework establish in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), which requires a plaintiff to first establish a prima facie case of racial discrimination. Id. at 802. To satisfy this burden, the plaintiff must show that "'(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination.'" George v. Leavitt, 407 F.3d 405, 412 (D.C. Cir. 2005) (quoting Stella v. Mineta, 284 F.3d 135, 145 (D.C. Cir. 2002)). The defendant contends that he is entitled to summary judgment on the plaintiff's discrimination claim because the plaintiff has failed to establish that she sustained an adverse employment action. Def.'s Mem. at 6-8.

"An 'adverse employment action' within the meaning of McDonnell Douglass is 'a

significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" Taylor v. Small, 350 F.3d 1286, 1293 (D.C. Cir. 2003) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)). "To establish an adverse personnel action in the absence of diminution in pay or benefits, [a] plaintiff must show an action with 'materially adverse consequences affecting the terms, conditions, or privileges of employment.'" Stewart v. Evans, 275 F.3d 1126, 1134 (D.C. Cir. 2002) (quoting Brown v. Brody, 199 F.3d 446, 457 (D.C. Cir. 1999)). Indeed, "[a]n 'employment decision does not rise to the level of an actionable adverse action . . . unless there is a tangible change in the duties or working conditions constituting a material employment disadvantage.'" Id. (quoting Walker v. WMATA, 102 F. Supp. 2d 24, 29 (D.D.C. 2000)).

     Here, the defendant contends that the plaintiff's nonselction for the CARF Specialist position was not an adverse employment action because it would have been a lateral transfer. Def.'s Mem. at 7. Specifically, the defendant notes that contrary to the plaintiff's assertion, the CARF Specialist position would not have entitled the plaintiff to additional pay or benefits. Id. Rather, the additional pay that the plaintiff references in her complaint was not instituted for the CARF Specialist position until nine months after the plaintiff was not selected for the position. In fact, the defendant states that the pay increase was not even contemplated at the time of the vacancy announcement. Id. Although the plaintiff concedes that the CARF Specialist position would have been a lateral transfer, Def.'s Opp'n, Ex. (Adams Depo.) at 45 (noting that the position would have been a lateral transfer), she argues that her nonselection was nonetheless an adverse employment action. Pl.'s Opp'n at 6-13. Specifically, the plaintiff opines, inter alia, that

the CARF Specialist position would have substantially expanded her job responsibilities and duties[4] and by denying her this transfer she therefore suffered an adverse employment action. Id. at 7-12.

The District of Columbia Circuit has directly addressed the question of when lateral transfers can rise to the level of an adverse employment action. The Circuit Court held that

> a plaintiff who is made to undertake or who is denied a lateral transfer—that is, one in which she suffers no diminution in pay or benefits—does not suffer an actionable injury unless there are some other materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm. Mere idiosyncrasies are not sufficient to state an injury.

Brown, 199 F.3d at 457; see Stewart v. Ashcroft, 352 F.3d 422, 426 (D.C. Cir. 2003) (quoting Brown, 199 F.3d at 457). This language "suggests that there are lateral transfers that could be considered adverse employment actions." Stewart, 352 F.3d at 426. In Brown, the Court concluded that the plaintiff had failed to establish that she was subjected to an adverse employment action when she received a temporary reassignment to a less desirable position in which there was "no objective basis for finding that she was harmed by [the transfer] in any tangible way." Brown, 199 F.3d at 457. In Stewart, however, the Court concluded that the plaintiff had suffered an adverse employment action when he was not selected for a lateral transfer. Stewart, 352 F.3d at 426-27. The Court reached this conclusion because it found that although the plaintiff's pay and benefits would have been identical had she been selected as the

---

[4] The plaintiff also argues that she suffered an adverse employment action because the CARF Specialist position paid a higher salary than her current position and her future employment opportunities were harmed by her nonselction for the CARF Specialist position. Pl.'s Opp'n at 5-13. Because this Court concludes that there is evidence to establish that the plaintiff suffered an adverse employment action based upon the duties she would have assumed as a CARF Specialist, the Court need not discuss these alternative positions.

Chief of the Department of Justice division where he had worked, his nonselection for the Chief's position was an adverse employment action as the nonselection "denied him the opportunity to advance within the hierarchy of the [division] and the Department [of Justice] more generally." Id. In so finding, the Circuit Court concluded that "failing to select an employee for a position with substantially greater supervisory authority is an adverse employment action." Id. at 427. The application of these two cases have helped define the contours of when a lateral transfer amounts to an adverse employment action. Compare Holcomb v. Powell, 433 F.3d 889, 903 (D.C. Cir. 2006) (adverse employment action demonstrated by "the precipitous reduction in the complexity of [the plaintiff's] work and the substantial amount of time it took to correct these deficiencies"), and Clipper v. Billington, ___ F. Supp. 2d ___, ____, 2006 WL 225834, at *5 (D.D.C. Jan, 31, 2006) (adverse employment action found when employee "was detailed out of her parking specialist position to various other positions with 'undescribed duties' for nearly two years . . . [and] the positions she was detailed to had insufficient work assignments and low responsibilities."), with Jones v. D.C. Dep't of Corr., 429 F.3d 276, 281 (D.C. Cir. 2005) ("Neither a routine shift change nor a routine reassignment that was part of a probationary employee's ordinary training can be deemed an adverse employment action.").

      The facts here are much more analogous to Stewart than to Brown. Here, the CARF Specialist position had a number of responsibilities and duties that were different than the duties assigned to an air traffic controller. For example, a CARF Specialist's duties include "coordinating small and large scale military missions," both domestically and internationally, Pl.'s Opp'n, Ex. 6 (Beard Decl.) ¶ 6, and restricting air space for both military and civilian events

and enforcing that restriction, id., Ex. 8 (Sliney Depo.) at 43; see also Ex. 10 (position description). Moreover, the CARF Specialist position requires CARF certification, id., Ex. 6 (Beard Decl.) ¶ 6, which is acquired though additional training, Pl.'s Opp'n, Ex. 8 (Sliney Depo.) at 56-57, that could take anywhere from three to five months to complete. Id., Ex. 4 (Moreno Depo.) at 26-27. In addition, CARF Specialists are required to act in a supervisory role as a controller-in-charge "considerably more often than floor specialist." Id., Ex. 6 (Beard Decl.) ¶¶ 10-11. The controller-in-charge also serves as a personnel manager, responds to management questions, and performs other administrative duties, along with coordinating information with the floor supervisors and resolving disputes arising with field facilities. Id. ¶¶ 11-12. Based on the foregoing, it is clear that although this position would not have entitled the plaintiff to any additional pay or benefits, not selecting the plaintiff for a position that had significantly different and heightened job responsibilities, along with additional supervisory functions amounted to "materially adverse consequences affecting the terms, conditions, or privileges of [her] employment . . . such that a reasonable trier of fact could conclude that [the plaintiff] has suffered objectively tangible harm."[5] Brown, 199 F.3d at 457; see Stewart, 352 F.3d at 427. Thus, this Court must conclude that there is sufficient evidence in the record to establish that the plaintiff suffered an adverse employment action as a result of her non-selection to the CARF Specialist position. Accordingly, the Court must deny the defendant's summary judgment motion on this count of the complaint.

## IV.   Conclusion

The plaintiff failed to exhaust her administrative remedies with regard to her retaliation

---

[5] The fact that this was a temporary detail does not alter the foregoing analysis.

claim, and accordingly, this claim must be dismissed. However, there is sufficient evidence in the record that the plaintiff suffered an adverse employment action when she was not selected for the CARF Specialist position. Therefore, the defendant's motion for summary judgment on this count of the complaint must be denied.

      **SO ORDERED** this 16th day of February, 2006.

REGGIE B. WALTON
United States District Judge
